21-CV-01527 (GHW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRELL SMALL,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
VALERIE PAUL, Principal of Jamaica Children's
School,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT**

**TYRELL SMALL**
(*PRO SE*)

9161 193rd St Apt 2C
Queens, NY 11423
(516) 754-9028
tyrelldsmall@gmail.com

Served May 27, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................iii

PRELIMINARY STATEMENT...................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................... 2

ARGUMENT ................................................................................................................................... 10

   POINT I ..................................................................................................................................... 10

     PLAINTIFF HAS PROPERLY INCLUDED NEW YORK CITY DEPARTMENT OF
     EDUCATION AS A PARTY TO THE INSTANT LITIGATION ...................................... 10

   POINT II .................................................................................................................................... 11

     PLAINTIFF HAS SET FORTH A PRIMA FACIE CASE OF SEXUAL ORIENTATION
     DISCRIMINATION UNDER TITLE VII, NYSHRL AND NYCHRL .............................. 11

       A.     Standard of Law.................................................................................................... 11

       B.     Plaintiff Has Stated Valid Discrimination Claims .................................................. 12

         1)     The administration refused to take steps to appropriately discipline a student
              based on his discriminatory behavior against me and took me accountable for
              the student's behavioral issues.......................................................................... 12

         2)     I was replaced by individuals outside my protected group.............................. 14

         3)     I was treated less favorably than similarly situated employees outside my
              protected group ................................................................................................. 14

   POINT III................................................................................................................................... 16

     PLAINTIFF STATES VALID HOSTILE WORK ENVIRONMENT CLAIMS UNDER
     TITLE VII, THE NYSHRL, AND NYCHRL ..................................................................... 16

       A.     Standard of Law.................................................................................................... 16

       B.     Plaintiff's Allegations Clearly Support a Hostile Work Environment Claim....... 17

   POINT IV................................................................................................................................... 21

     PLAINTIFF STATES VALID CLAIMS FOR RETALIATION UNDER TITLE VII,
     NYSHRL AND NYCHRL.................................................................................................... 21

       A.     Standard of Law.................................................................................................... 21

i

B.     Complaints Made to the Administration Regarding Student's Discriminatory Conduct and my Union Grievance Constitute Protected Activities...................... 21

CONCLUSION ................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alfano v. Costello*,
 294 F.3d 365 (2d Cir. 2002) ................................................................................... 16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................... 10

*Baskerville v. Blot*,
 224 F. Supp.2d 723 (S.D.N.Y. 2002) ...................................................................... 10

*Berger-Rothberg v. City of New York*,
 803 F. Supp. 2d 155 (E.D.N.Y. 2011) ..................................................................... 21

*Bermudez v. City of New York*,
 783 F. Supp. 2d 560 (S.D.N.Y. 2011) ..................................................................... 17

*Burgos v. Hopkins*,
 14 F.3d 787 (2d Cir. 1994) ..................................................................................... 10

*Carlton v. Mystic Transp., Inc.*,
 202 F.3d 129 (2d Cir. 2000) ................................................................................... 14

*Das v. Consol. Sch. Dist. of New Britain*,
 369 F. App'x 186 (2d Cir. 2010) ............................................................................. 17

*Eubanks v. New York City Dep't of Educ.*,
 No. 18-cv-7877, 2021 WL 1110587, at *14 (S.D.N.Y. Feb. 3, 2021),
 *report and recommendation adopted*,
 No. 18-cv-7877, 2021 WL 1105065 (S.D.N.Y. Mar. 23, 2021) ............................... 22

*Faraci v. N.Y. State Off. of Mental Health*, 2013 N.Y. Slip Op 32613[U], *10 (Sup. Ct., N.Y.
 Cnty. 2013) ............................................................................................................ 21

*Fitzgerald v. Henderson*,
 251 F.3d 345 (2d Cir. 2001) ................................................................................... 17

*Forrest v. Jewish Guild for the Blind*,
 3 N.Y.3d 295 (2004) ............................................................................................... 21

*Haines v. Kerner*,
 404 U.S. 519 (1972) ............................................................................................... 10

*Hausdorf v. NYCDOE*,
 2018 U.S. Dist. LEXIS 13330 (S.D.N.Y. Jan. 25, 2018) ............................................ 2

*Hernandez v. Goord*,
 312 F. Supp. 2d 537 (S.D.N.Y 2004) ...................................................................... 10

*Hoag v. Fallsburg Cent. Sch. Dist.*,
 279 F. Supp. 3d 465 (S.D.N.Y. 2017) ..................................................................... 16

*Humphries v. City Univ. of N.Y.*,
  2013 U.S. Dist. LEXIS 169086, at*37 (S.D.N.Y. Nov. 26, 2013) ........................................... 11

*Khwaja v. Jobs,*
  No. 1:19-cv-07070 (JPC) (SDA), 2021 U.S. Dist. LEXIS 65884 (S.D.N.Y. Mar. 26, 2021) .. 12

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015)................................................................................................passim

*Livingston v. City of New York*,
  No. 19-CV-5209 (KPF), 2021 WL 4443126, at *25 (S.D.N.Y. Sept. 28, 2021)..................... 22

*Mandell v. County of Suffolk*,
  316 F.3d 368 (2d Cir. 2003)..................................................................................................... 14

*McDonnell Douglas Corp., v. Green*,
  411 U.S. 792 (1973).................................................................................................................. 11

*Modica v. N.Y.C. Dep't of Educ. et al.*,
  2021 U.S. Dist. LEXIS 146041 (S.D.N.Y. Aug. 4, 2021) .......................................................... 2

*Murray v. NYC Board of Education,*
  No. 15-cv-03191 (RRM) (ST) (E.D.N.Y. March 21, 2019) ....................................................... 2

*Nielsen v. Rabin*,
  746 F.3d 58 (2d Cir. 2014)......................................................................................................... 2

*Peries v. New York City Bd. Of Educ.*,
  No. 97-cv-7109, 2001 WL 1328921, at *6 (E.D.N.Y. Aug. 6, 2001)....................................... 18

*Perry v. Ethan Allen, Inc.*,
  115 F.3d 143 (2d Cir. 1997)..................................................................................................... 16

*Raspardo v. Carlone*,
  770 F.3d 97 (2d Cir. 2014)....................................................................................................... 16

*Richardson v. New York State Dept. of Corr*,
  180 F.3d 426 (2d Cir. 1999)............................................................................................... 16, 18

*Ringel v. N.Y.C. Dep't of Educ.*,
  No. 19-CV-2374 (DG) (TAM), 2022 U.S. Dist. LEXIS 20636, at *30 (E.D.N.Y. Feb. 4, 2022)
  ....................................................................................................................... 16, 17, 18, 19

*Ringel v. N.Y.C. Dep't of Educ.*,
  No. 19-CV-2374 (DG) (TAM), 2022 U.S. Dist. LEXIS 20636, at *43 (E.D.N.Y. Feb. 4, 2022)
  ........................................................................................................................................ 22

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
  743 F.3d 11 (2d Cir. 2012)....................................................................................................... 22

*Rodgers v. Western Southern Life Ins. Co.*,
  12 F.3d 668 (7th Cir. 1993)...................................................................................................... 18

*Shultz v. Congregation Shearith Israel of City of N.Y.*,
  867 F.3d 298 (2d Cir. 2017)..................................................................................................... 21

*Soto v. Walker*,
   44 F.3d 169 (2d Cir. 1995)............................................................................ 10

*Swierkiewicz v. Sorema, N.A.*,
   5 Fed.Appx. 63 (2d Cir.2001) ...................................................................... 11

*Torres v. Pisano*,
   116 F.3d 625 (2d Cir. 1997).......................................................................... 17

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)............................................................................ 12

*Whidbee v. Garzarelli Food Specialties, Inc.*,
   223 F.3d 62 (2d Cir. 2000)............................................................................ 17

*White v. Roosevelt Union Free School District*,
   2017 U.S. Dist. LEXIS 210480 (E.D.N.Y. Dec. 20, 2017) ...................... 2

*Wright v. Monroe Community Hosp.*,
   493 F. App'x 233 (2d Cir. 2012) .................................................................. 21

*Zagerson v. N.Y.C. Dep't of Educ.*,
   20 Civ. 11055 (KPF), (S.D.N.Y. Jan. 31, 2022) ...................................... 2

*Zoulas v NY City Dept. of Educ.*,
   400 F Supp 3d 25 (S.D.N.Y. 2019) ...................................................... 10, 20

**Statutes**

Title VII of the Civil Rights Act of 1964 ("Title VII")
   42 U.S.C. § 2000e-3(a) .................................................................................. 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TYRELL SMALL,

                                        Plaintiff,

                -against-                                             **21-CV-01527 (GHW)**

NEW YORK CITY DEPARTMENT OF EDUCATION,
VALERIE PAUL, Principal of Jamaica Children's
School,

                                        Defendants.
-----------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**<u>PRELIMINARY STATEMENT</u>**

Plaintiff *pro se* TYRELL SMALL, a former probationary teacher employed by the New York City Department of Education ("NYCDOE"), respectfully submits this memorandum of law in response to Defendants' motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). I commenced this employment discrimination action based on sex discrimination (perception of gender orientation), hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

I worked as a general education teacher within the NYCDOE from September 2016 until my unfair discontinuance on March 20, 2020, while I was teaching at Jamaica Children's School (PS 312Q) under the supervision of Principal Valarie Paul. Prior to my time at PS 312Q, I always received "Effective" and "Highly Effective" ratings. It was not until I raised concerns with Principal Paul regarding a student's homophobic remarks that I began to receive poor ratings,

1

disciplinary letter and face harsh retaliation and discrimination as a result of my perceived sexual orientation. A number of similarly situated probationary teachers who present as straight have not been targeted and faced with similar treatment which I have experienced.

Defendants' motion is premature at this juncture and should be denied, as I have stated valid claims of discrimination and retaliation. Defendants' motion reaches far beyond what is appropriate for a motion to dismiss, and courts have routinely denied motions of this type against teachers at this early stage of litigation. *See Hausdorf v. NYCDOE*, 2018 U.S. Dist. LEXIS 13330 (S.D.N.Y. Jan. 25, 2018); *White v. Roosevelt Union Free School District*, 2017 U.S. Dist. LEXIS 210480 (E.D.N.Y. Dec. 20, 2017); *Murray v. NYC Board of Education,* No. 15-cv-03191 (RRM) (ST) (E.D.N.Y. March 21, 2019); *Modica v. N.Y.C. Dep't of Educ. et al.*, 2021 U.S. Dist. LEXIS 146041 (S.D.N.Y. Aug. 4, 2021); *Zagerson v. N.Y.C. Dep't of Educ.*, 20 Civ. 11055 (KPF), (S.D.N.Y. Jan. 31, 2022).

Alternatively, if the Court is inclined to find that more factual detail is necessary, I respectfully request leave to file an amended complaint to address any deficiencies identified by the Court. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

## STATEMENT OF FACTS

### Background

I began my employment with NYCDOE in September 2016 as a general education teacher at PS 327 located in Brooklyn, New York. *See* Amended Complaint ("AC") at Addendum ¶ 1. I taught at PS 327 during the 2016-17 school year and received a "highly effective" Advanced Overall rating. *Id.* at ¶ 2. For the 2017-2018 school year, I taught at PS 136 in Queens, New York.

*Id* at ¶ 3. My overall rating for the 2017-2018 school year was "Effective," however I was excessed from the school at the conclusion of the year due to budget cuts. *Id.* For the 2018-2019 school year, I was hired and taught at PS 325 in Brooklyn, New York. *Id.* at 4. Despite an overall "Effective" rating, I voluntarily decided to leave PS 325 at the conclusion of the 2018-19 school year. *Id.* at ¶ ¶ 4-5. I was hired to work at PS 312 in Queens, New York for the 2019-2020 school year. My best friend Rashaad Simpson and Principal Valerie Paul were good friends when I was hired at PS 312. *Id.* at ¶ 5. I was originally assigned to teach a third-grade class, and then was asked to take over a fourth-grade class early in the school year, by Principal Paul. *Id.* at ¶ 5.

I have been perceived as being gay by school administration and some of my colleagues because I display feminine qualities in the classroom and my voice is not very deep. *Id.* at ¶ 6. Additionally, I have been told by other teachers that my sexuality is often discussed between teachers and administrators in the teacher's lounge. *Id.* at ¶ 7.

**2019-20 School Year**

Beginning in October 2019, my fourth grade student A.B. began displaying behavioral issues. For example, he had a verbal and physical altercation with another student E.F., verbally attacked Ms. Dixon, another teacher that was covering my class, drew a picture of the school with my name crossed out and "I hate him" next to it. *Id.* at ¶ 8. Following A.B.'s verbal attack on Ms. Dixon, Principal Paul asked me to investigate the situation. I was then "spoken to" by Principal Paul because the other student's parents complained that it was my fault the students had an altercation leading to the attack on Ms. Dixon, even though I was not present at the time. Principal Paul did not take any actions to correct the student's behavior and allowed him to continue terrorizing the school. *Id.* at ¶ 9. In late October 2019, the same student had called me gay. When I reported it to Principal Paul in front of my paraprofessional, Principal Paul asked me, "what did

you do to him?", as if I provoked the student to behave this way towards me, and did nothing to address student A.B's behavior. *Id.* at ¶ 10.

I received "Effective" ratings on several observations conducted by Principal Paul on November 4, 2019, and January 14, 2020. *Id.* at ¶ 11.

Beginning in November 2019, I began noticing a change in the way Principal Paul behaved towards me. For example, she would yell at me in front of others while having very aggressive body language (moving her neck back and forth, pointing her finger at me), and undermining my disciplinary decisions regarding students, even when I had the parent's permission. *Id.* at ¶ 12. Additionally, in November 2019, I had another student J.K., that was not doing his schoolwork. After discussing it with J.K.'s mother, I decided to discipline J.K. by preventing him from attending basketball, his extracurricular activity until he did his schoolwork. Principal Paul, decided to undermine my decision and pulled the student out of class for basketball practice anyway. *Id.* at ¶ 13. While going on a school trip to see the movie Frozen 2, the entire school, except me, was allowed to leave students with behavioral problems with other teachers, such as Ms. Marissa Fisher. I asked to leave behind student A.B. but Principal Paul told me that I could not leave anyone behind, and all of my students must go on the trip. *Id.* at ¶ 14.

Also, around the same time, two other students in my class, reported to me that student A.B. had sexually harassed another student by putting a marker cap into the back of another student's pants; specifically, in his upper butt which was showing because his pants were not pulled all the way up. After speaking to the class and addressing the behavior, the student acted out again. I reported it to Principal Paul, and she did nothing to correct the situation. Upon information and belief, Principal Paul did not contact the parents of the students that were involved in the situation. *Id.* at ¶ 15. There have been other incidences reported to me by students regarding disrespectful

4

comments A.B. has made about me being gay, etc., that I addressed with A.B. and his mother and did not bring to Principal Paul's attention. *Id*. at ¶ 16. In November and December 2019, after being asked to work without disrupting the class during independent work, A.B. began throwing various items and tearing down things off the walls. *Id*. at ¶ 17. In December 2019, I was pulled out of the winter show to be spoken to by Principal Paul because of my alleged tone with the students. This was done in front of the entire school and my students were left with my one-to-one paraprofessional. While in the office, she spoke to me in the most threatening tone and manner and stated, as she has done before, that I will lose my job before she does. *Id*. at ¶ 18.

On or about January 22, 2020, A.B. (who had been held back) threatened me at school, stating that "he would slap the gay out of me." I reported this to Principal Paul, and, upon information and belief, she did nothing to correct or address it with the student. With each incident, I was pulled into the office and spoken to in a condescending tone and manner and each time I was told that I have grievances against me and I was a problem. *Id*. at ¶ 19.

In January 2020, another general education teacher Marissa Fisher was put in my class to watch me. When I asked Ms. Fisher, she said that she did not have a clue why she was in my class. When I asked Principal Paul why Ms. Fisher was placed with me in a general education class that only requires one teacher, she only told me that she is there to help. However, when I would leave or share work with Ms. Fisher to complete or help with, Principal Paul advised me verbally and in email that she was not there to do any work. *Id*. at ¶ 20. I was made to feel uncomfortable in my own classroom because I was being watched by another teacher who reported back to Principal Paul. My class had the best scores out of the two classes that were on the grade. Therefore, there was no need for extra support. I was a target. *Id*. at ¶ 21.

During her time in the classroom from January to February 2020, I have watched Ms. Fisher scream at the top of her lungs to the point where she was red in her face, but she was never disciplined. I have watched her speak to the children in the most condescending manner on several occasions but never spoken to or disciplined. *Id.* at ¶ 21.

Sometime between January and February 2020, two parents, Isha Williams and Maribel Duran, stated to me that Principal Paul was questioning them about me and that she did not like me because I am gay. *Id.* at ¶ 22.

On February 7, 2020, student A.B. slapped me in the face with an article of clothing while he was walking up the stairs in the hallway. Despite my reporting this to Principal Paul, she took no action to discipline the student. *Id.* at ¶ 23.

On February 16, 2020, I received a disciplinary notice dated February 13, 2020 to meet with Principal Paul on February 26, 2020. *Id.* at ¶ 24. Following the disciplinary meeting held on February 26, 2020, I received a disciplinary letter dated February 27, 2020, stating false allegations of corporal punishment and verbal abuse regarding my allegedly pushing the same student who made discriminatory comments about me. I did not push the student, I was trying to get him to move up the stairs, the same way other teachers at the school do. *Id.* at ¶ 25. During the investigation of the verbal abuse and corporal punishment accusations, Principal Paul coerced my testimony and explicitly told me what I should not say. Principal Paul did not question any of the adult witnesses, nor A.B.'s mother whom I contacted regarding every incident I ever had with A.B. *Id.* at ¶ 26. I have an audio recording from the February meeting to depict the tone Principal Paul took with me. During her conversation, her gestures were neck swing from left to right and finger pointing. I have asked Mr. Simpson if he has ever experienced this tone and level of behavior and he explicitly stated no. *Id.* at ¶ 27. I explicitly stated to Principal Paul that the student threatened

to "slap the gay out of me" and she never addressed the issue and indirectly admits it by stating she does not have nothing on paper. Principal Paul stated that she had a meeting and spoke to the mom. However, this never happened because the mother and I were in constant contact about her son and any meetings she had with Principal Paul, she informed me of. I have the text to prove there was not a meeting but only a call of which the principal left a message and the parent tried to contact her back but did not get an answer. This is all recorded on audio and through screenshots of text. *Id*. at ¶ 28.

On February 28, 2020, I was placed on a Teacher Improvement Plan ("TIP") and required to have weekly meetings as an intimidation tactic. *Id*. at ¶ 29. I began receiving text messages and emails past 10pm that mandated a response outside of work hours. *Id*.

In March 2020, student A.B. wrote on our bathroom sign in and out sheet "suck dick" and "401 bitches". I brought this to Principal Paul and she did not give me a response and did nothing about it at all. This was all prior to my discontinuance. *Id*. at ¶ 30.

Following this incident, I immediately filed a grievance through my union for improper investigation on March 10, 2020, and a Step 1 grievance meeting was held with Principal Paul on March 13, 2020. *Id*. at ¶ 31. Though I initially filed a grievance because of the improper investigation, I did email my union about looking into discrimination charges. I spoke with my chapter leader about this concern verbally and she agreed it is discrimination but did not address it. *Id*. at ¶ 32. Upon speaking with the district representative and borough representative, in addition to my concerns regarding discrimination, I mentioned the idea of this investigation being done improperly. *Id*. at ¶ 33. I had an appeal meeting about the investigation that ultimately led to my discontinuance and expressed this to the appeal committee and the committee decided to take on my case because I expressed concerns of discrimination and the facts of the situation. *Id*. at ¶ 34.

On March 10, 2020, I also was observed by Principal Paul and was shown a draft observation report with all developing and ineffective rated categories. *Id.* at ¶ 35.

On March 20, 2020, I received a notice of discontinuance of my employment effective April 20, 2020. *Id.* at ¶ 36.

On April 15, 2020, during remote learning, I received a submission of work from the same student and he wrote on the submission, "I am tired of this fucking work, gay faggot." Despite reporting this discriminatory comment to Principal Paul, no disciplinary measures were taken against the student. The same student also called me a "gay nigger" in January or February 2020, and despite my reporting this to Principal Paul as well, no disciplinary action was taken against the student. *Id.* at ¶ 37.

I was officially discontinued and terminated from my employment on April 20, 2020. *Id.* at ¶ 38. I have since been replaced by Joyce McNeil and Marissa Fisher, both are women married to males. They are heterosexual individuals who have children. Ms. McNeil is the substitute teacher that took over for me and Marrisa supported her. They are not perceived as gay because they are married to men and both have children. *Id.* at ¶ 40.

Other, similarly situated, probationary teachers, not perceived as gay, such as Rashaad Simpson, Dana Segui, and Amanda Giarrizzo were not discontinued although they engaged in behavior similar to my behavior. *Id.* at ¶ 39. Dana Segui and Amanda Giarrizzo have physically moved students that refused to move and have screamed at students. Yet, they have not been accused of corporal punishment or verbal abuse. Their classroom was on the same floor as the main office and Principal Paul's office, as such, their behavior would have easily been witnessed by Principal Paul. I witnessed this with my own eyes between September 2019, and January 2020. *Id.* at ¶ 43. Caitlyn Nocera and Rashaad Simpson have both raised their voices to their students

and have sent students to my classroom because of their behavior and have not been accused of verbal abuse. *Id*. at ¶ 44.

Christiana Vazquez, a similarly situated untenured teacher in the next door classroom with Megan Molina, a 5th grade teacher violently screamed at the top of her lungs at her students at least twice a week. This is verbal abuse. This could be heard throughout the school and can be viewed on video. However, she was supposedly never heard doing it, but Mr. Simpson, Ms. Nocera, Ms. Molina, and myself all witnessed it. She would verbally humiliate her students but never had any consequences. *Id*. at ¶ 41. Ms. Vazquez has behaved like this towards her students on several occasions, even in front of the main office and Principal Paul's office where it has been heard and seen. *Id*. at ¶ 42. Between December 2019, and January 2020, I witnessed Ms. Vasquez stop her entire class in the hallway to scold them with her vicious screams as they were going down the stairs. However, Principal Paul never reprimanded Ms. Vazquez nor were there verbal abuse allegations made against her, although this happened quite often and was the norm. *Id*. at ¶ 42.

I have not yet secured another position since my termination, and therefore my damages are ongoing and accruing to date. *Id*. at ¶ 45. Defendant-Principal Paul has since been involuntarily terminated from the NYCDOE. *Id*. at ¶ 46.

I believe I have been discriminated against based on the perception that I am gay, and further retaliated against by Principal Paul for reporting the inappropriate discriminatory behavior on multiple occasions, including both physical and verbal abuse by the student against me, without any consequence being taken by Principal Paul against the student. *Id*. at ¶ 47.

## ARGUMENT

As an initial matter, "[i]n reviewing a motion to dismiss a complaint, a court must accept as true the factual allegations in the complaint and must read the pleadings in the light most favorable to and draw all reasonable inferences in favor of the non-moving party" *Baskerville v. Blot*, 224 F. Supp.2d 723, 728 (S.D.N.Y. 2002). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Zoulas v NY City Dept. of Educ.*, 400 F Supp 3d 25, 47 (S.D.N.Y. 2019) (citing *Iqbal*, 556 U.S. at 679). Moreover, the *pro se* litigant is also held to "less stringent standards than formal pleadings drafted by lawyers …" and a Court "'must construe the complaint liberally and 'interpret [it] to raise the strongest arguments that [it] suggests.'" *Hernandez v. Goord*, 312 F. Supp. 2d 537, 543 (S.D.N.Y 2004) *See Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## POINT I

### PLAINTIFF HAS PROPERLY INCLUDED NEW YORK CITY DEPARTMENT OF EDUCATION AS A PARTY TO THE INSTANT LITIGATION

Defendants argue that "the New York City Department of Education not the City of New York is a proper party to this litigation" (Def. Mem. at 6). I agree with Defendants and the City is not named as a Defendant in the Amended Complaint. *See* page 1 of the AC.

# POINT II

## PLAINTIFF HAS SET FORTH A PRIMA FACIE CASE OF SEXUAL ORIENTATION DISCRIMINATION UNDER TITLE VII, NYSHRL AND NYCHRL

### A. <u>Standard of Law</u>

Discrimination claims under the Title VII and the NYSHRL are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792 (1973). A *prima facie* case of discrimination requires a showing of "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *See McDonnell Douglas* at 802. In addition, a complaint must give "plausible support to a *minimal* inference of discriminatory motivation." *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Discrimination claims brought under the NYCHRL are subject to a "more liberal judicial construction than those brought under federal or state law" *Humphries v. City Univ. of N.Y.*, 2013 U.S. Dist. LEXIS 169086, at*37 (S.D.N.Y. Nov. 26, 2013).

On a motion to dismiss, a plaintiff is entitled to every reasonable inference in his favor. *See Littlejohn at 306.* "The complaint needed only to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."" *Id.* at 307 (quoting *Swierkiewicz v. Sorema, N.A.*, 5 Fed.Appx. 63 (2d Cir.2001)). Courts "focus only on whether the allegations in the complaint give plausible support to the reduced *prima facie* requirements … in the initial phase of a litigation." *Id.* at 312

**B.  <u>Plaintiff Has Stated Valid Discrimination Claims</u>**

Defendants do not contest that my allegations would be sufficient to establish the first three prongs of a *prima facie* case of discrimination. Rather, Defendants argue that "[Plaintiff] does not plausibly allege that Defendants discriminated against him due to his perceived sexual orientation" (Def. Mem. at 8). I clearly have met my burden to support an inference of discrimination and survive a motion to dismiss at this early stage of this litigation.

"Because 'smoking gun' evidence is rare in discrimination cases, "plaintiffs usually must rely on 'bits and pieces' of information to support an inference of discrimination, i.e., a 'mosaic' of intentional discrimination." *Khwaja v. Jobs,* No. 1:19-cv-07070 (JPC) (SDA), 2021 U.S. Dist. LEXIS 65884 (S.D.N.Y. Mar. 26, 2021) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)). At the pleading stage, a plaintiff does not need substantial evidence of discriminatory intent. *See Littlejohn* at 311.

Here, the Amended Complaint alleges that (1) the school administration refused to take steps to appropriately discipline a student based on his discriminatory behavior against me and took me accountable for the student's behavioral issues; (2) I was replaced by individuals outside my protected group; (3) I was treated less favorably than similarly situated employees outside my protected group.

*1)  The administration refused to take steps to appropriately discipline a student based on his discriminatory behavior against me and took me accountable for the student's behavioral issues*

I spoke with Principal Paul on numerous occasions regarding not just the homophobic behavior of student A.B., but also the lack of disciplinary action taken to correct the behavioral issues student A.B. exhibited. In October 2019, when I reported to Principal Paul, in front of my paraprofessional, that A.B. called me gay, Principal Paul asked me, "what did you do to him?".

12

(AC ¶10). Principal Paul's refusal to address the situation and her comment implying that I provoked the student to behave this way demonstrate animus towards me because of my perceived sexual orientation. With each incident, I was pulled into Principal Paul's office and spoken to in a condescending tone and manner and each time I was told I was a problem. (AC ¶ 19). Not only did the administration fail to take a corrective action with regard to student A.B.'s homophobic comments and behavior, but instead, Principal Paul through her actions condoned said behavior and retaliated against me for reporting it. For example, despite my request to exclude student A.B. from a trip scheduled in November 2019 due to his behavioral issues, Principal Paul denied my request when the entire school, except me, was allowed to leave students with behavioral problems with other teachers. (AC ¶14).

Additionally, Isha Williams and Maribel Duran, two parents, informed me that Principal Paul was questioning them about me and that she did not like me because I am gay (AC ¶ 22).

Defendants assert that "Plaintiff does not link Principal Paul's criticism of his performance to his perceived sexual orientation" (Def. Mem. at 8). However, after I reported to Principal Paul that A.B. threatened me, stating that "he would slap the gay out of me" on January 22, 2020, and that he slapped me in the face with an article of clothing while he was walking up the stairs in the hallway on February 7, 2020, I received a disciplinary notice dated February 13, 2020 to meet with Principal Paul on February 26, 2020 and was placed on a Teacher Improvement Plan on February 28, 2020 (AC ¶¶ 19, 23-24, 29). Moreover, although my class had the best scores out of the two classes that were on the grade, I was made to feel uncomfortable in my own classroom in January and February 2020, by having another teacher, who reported back to Principal Paul, watch me teaching because I allegedly needed extra support (AC ¶ 20-21). In contrast, I always received "Effective" and "Highly Effective" ratings in previous school years (AC ¶¶ 2-5). The

circumstances under which Defendants took adverse actions against me support an inference of animus towards me because of my perceived sexual orientation.

### 2) I was replaced by individuals outside my protected group

"An inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class". *Littlejohn* at 312-13 (2d Cir. 2015) (quoting *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 135 (2d Cir. 2000)).

Here, the Amended Complaint pled that I have been replaced by Joyce McNeil and Marissa Fisher, both are women married to males. They are heterosexual individuals who have children. Ms. McNeil is the substitute teacher that took over for me and Marrisa supported her. They are not perceived as gay because they are married to men and both have children (AC ¶ 40). Accordingly, I was replaced by an individual outside my protected class, which support an inference of discrimination.

### 3) I was treated less favorably than similarly situated employees outside my protected group

A plaintiff may also support an inference of discrimination by showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

The Amended Complaint cures the defects identified in this Court's previous opinion and order that "[my] allegations lack any information about the alleged comparators, beyond that they are outside of [my] protected class and were treated differently".

For instance, the entire school, except me, was allowed to leave students with behavioral problems with other teachers, such as Ms. Marissa Fisher (AC ¶ 14). Principal Paul reprimanded me because of my alleged tone with the students in December 2019 and I received an unwarranted disciplinary letter on February 27, 2020 regarding allegations of corporal punishment (pushing a

student) and verbal abuse (AC ¶ 18). On the contrary, similarly situated, probationary teachers, not perceived as gay, such as Rashaad Simpson, Dana Segui, and Amanda Giarrizzo were not discontinued although they engaged in behavior similar to my behavior (AC ¶ 39). Between September 2019 and January 2020, Dana Segui and Amanda Giarrizzo have physically moved students that refused to move and have screamed at students. Yet, they have not been accused of corporal punishment or verbal abuse (AC ¶ 43).

Caitlyn Nocera and Rashaad Simpson have both raised their voices to their students and have sent students to my classroom because of their behavior and have not been accused of verbal abuse (AC ¶ 44). Between December 2019 and January 2020, I witnessed Ms. Christiana Vasquez, a similarly situated untenured teacher, violently screamed at her students at least twice a week, verbally humiliated them, and stopped her entire class in the hallway to scold them with her vicious screams as they were going down the stairs. However, Principal Paul never reprimanded Ms. Vazquez nor were there verbal abuse allegations made against her (AC ¶¶ 41-42).

I have also watched Ms. Fisher scream at the top of her lungs to the point where she was red in her face, but she was never disciplined. I have watched her speak to the children in the most condescending manner on several occasions but never spoken to or disciplined. (AC ¶ 21). The Amended Complaint pled that Ms. Fisher is not perceived as gay and Ms. Fisher and myself were similar to one another in all material respects by virtue of the fact that she fulfilled my position after my discontinuance (AC ¶ 40).

**POINT III**

**PLAINTIFF STATES VALID HOSTILE WORK ENVIRONMENT CLAIMS UNDER TITLE VII, THE NYSHRL, AND NYCHRL**

**A.  Standard of Law**

The standard for showing a hostile work environment under Title VII and the NYSHRL are essentially identical, and therefore these claims will be analyzed together. *Ringel v. N.Y.C. Dep't of Educ.*, No. 19-CV-2374 (DG) (TAM), 2022 U.S. Dist. LEXIS 20636, at *30 (E.D.N.Y. Feb. 4, 2022) (citing *Hoag v. Fallsburg Cent. Sch. Dist.*, 279 F. Supp. 3d 465, 479 (S.D.N.Y. 2017)).

To prevail on hostile work environment claims, a plaintiff must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002), (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). The standard has both objective and subjective components: "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). In determining whether a hostile environment exists, courts must look at the "totality of the circumstances." *Richardson v. New York State Dept. of Corr*, 180 F.3d 426, at 437-38 (2d Cir. 1999).

While the standard for establishing a hostile work environment is high, the Second Circuit has repeatedly cautioned against setting the bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of his employment *altered*

*for the worse.*'" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (quoting *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir. 1997). The environment need not be "unendurable" or "intolerable". *Id.* Nor must the victim's "psychological well-being" be damaged. *Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001). In short, "'the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases.'" *Whidbee*, 223 F.3d at 70 (quoting *Torres*, 116 F.3d at 631).

The standard for maintaining a hostile work environment claim is lower under the NYCHRL. *Bermudez v. City of New York,* 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011). Employers may only avoid liability under the NYCHRL for conduct that results in an employee being treated "less well" because of his membership in a protected category, when the conduct complained of constitutes nothing more than "petty slights and trivial inconveniences".

**B.   Plaintiff's Allegations Clearly Support a Hostile Work Environment Claim**

I suffered a hostile work environment due to the failure of the school administration to address the discriminatory and harassing behavior of student A.B. Whenever I did speak to Principal Paul regarding the homophobic and racial slurs student A.B. used towards me, not only was nothing done about it, but rather I was met with hostility and adverse employment actions taken against me.

The Second Circuit has yet to squarely address whether "student-on-teacher harassment can give rise to a hostile work environment claim." *Ringel v. N.Y.C. Dep't of Educ.* at 32 (citing *Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 190 (2d Cir. 2010) (summary order)). However, district courts in this circuit have generally required plaintiffs alleging such claims to show that (1) a hostile environment existed; and (2) the school either "provided no reasonable

avenue of complaint or knew of the harassment and failed to take appropriate remedial action." *Id.*
*See also Peries v. New York City Bd. Of Educ., No. 97-cv-7109, 2001 WL 1328921, at \*6 (E.D.N.Y.*
*Aug. 6, 2001).*

Here, beginning in October 2019, student A.B. *repeatedly* made disrespectful comments
about me being gay (AC ¶¶ 10, 16, 37), drew a picture of the school with my name crossed out
and "I hate him" next to it (AC ¶ 8), sexually harassed another student and acted out again after I
spoke to the class and addressed the behavior (AC ¶ 15), threw various items and tearing down
things off the walls after I asked him to work without disrupting the class during independent work
in November and December 2019 (AC ¶ 17),  threatened me at school, stating that "he would slap
the gay out of me," (AC ¶ 19), slapped me in the face with an article of clothing while he was
walking up the stairs in the hallway (AC ¶ 23), wrote on our bathroom sign in and out sheet "suck
dick" and "401 bitches" (AC ¶ 30), wrote a submission of work, "I am tired of this fucking work,
gay faggot" (AC ¶ 37).

Defendants assert that the comments alleged by Plaintiff, taking place over a seven-month
period, by a single fourth-grade student, are not sufficiently severe or pervasive to establish a
hostile work environment and cite cases where courts found that three/four comments over several
months were not sufficient to establish a hostile work environment claim (Def. Mem. at 13).
However, "there is neither a threshold 'magic number' of harassing incidents that gives rise,
without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails
as a matter of law to state a claim". *Richardson,* 180 F.3d at 439 (citing *Rodgers v. Western*
*Southern Life Ins. Co.*, 12 F.3d 668 (7th Cir. 1993)).

In *Ringel v. N.Y.C. Dep't of Educ.*, No. 19-CV-2374 (DG) (TAM), 2022 U.S. Dist. LEXIS
20636, at \*35 (E.D.N.Y. Feb. 4, 2022), Plaintiff also alleged that over a seven-month period, he

suffered repeated, racially and religiously charged slurs and epithets, combined with acts of violence and death threats, and that Defendants ignored his pleas for help. The Court found that the totality of the circumstances could lead a reasonable jury to find that Ringel's classroom was permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. The defendants also argued that Ringel's hostile work environment claims must fail because it was just one behaviorally challenged student harassing Plaintiff, instead of a classroom of students. The district court, however, found this argument unavailing. *See Ringel v. N.Y.C. Dep't of Educ.*, No. 19-CV-2374 (DG) (TAM), 2022 U.S. Dist. LEXIS 20636, at *35 (E.D.N.Y. Feb. 4, 2022).

Here, the frequency of A.B.'s conduct, its relative severity, how it interfered with my job, and Defendants refusal to address my complaints created an abusive working environment.

I reported each incident to Principal Paul, but Principal Paul took no action to discipline the student or otherwise attempt to correct the misbehavior. For instance, on January 22, 2020, I reported to Principal Paul that student A.B. said he would "slap the gay out of me," however, nothing was done about it. (AC ¶ 19). Around the same time, I reported to Principal Paul that student A.B. had called me a "gay nigger" and again no disciplinary action directed towards A.B. was taken. (AC ¶ 37).  On February 7, 2020, A.B. slapped me in the face with an article of clothing, and again, despite my report to Principal Paul, no disciplinary action was taken against the student (AC ¶ 23). Instead, after reporting these incidents to Principal Paul, I received a disciplinary notice on February 16, 2020, which required I meet with Principal Paul on February 26, 2020, and the next day a disciplinary letter was added to my file (AC ¶¶ 23-24). I also received poor ratings and was placed on a Teacher Improvement Plan ("TIP") (AC ¶ 29). In January 2020, Principal Paul

assigned Ms. Fischer in my general education class that only requires one teacher and Ms. Fischer said that she did not have a clue why she was in my class (AC ¶ 20).

Furthermore, after I started to complain about the student discriminatory behavior, Principal Paul yelled at me in front of others while having very aggressive body language and undermining my disciplinary decisions regarding students (AC ¶ 12). In November 2019, Principal Paul decided to undermine my decision to prevent a student from attending his extracurricular activity until he did his schoolwork, by pulling the student out of class for basketball practice anyway. (AC ¶ 13). In December 2019, I was pulled out of the winter show, in front of the entire school, to be spoken to by Principal Paul because of my alleged tone with the students (AC ¶ 18). Principal Paul's conduct towards me in front of my peers and students, which diminished my authority, also contributed to a hostile work environment. *See Zoulas v NY City Dept. of Educ.*, 400 F. Supp.3d 25, 60 (S.D.N.Y. 2019) (holding that a plaintiff experienced a hostile work environment when she pointed to a conduct that endangered her or her authority).

The totality of the circumstances here support that I was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of my employment and create an abusive working environment.

**POINT IV**

**PLAINTIFF STATES VALID CLAIMS FOR RETALIATION UNDER TITLE VII, NYSHRL AND NYCHRL**

**A.  Standard of Law**

Title VII prohibits employers from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). To survive a motion to dismiss a retaliation claim, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017) (quoting *Littlejohn*, 795 F.3d at 316). Claims under the NYSHRL are subject to the same standards as Title VII. See *Wright v. Monroe Community Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012); see also *Faraci v. N.Y. State Off. of Mental Health*, 2013 N.Y. Slip Op 32613[U], *10 (Sup. Ct., N.Y. Cnty. 2013) (analyzing NYCHRL) (citing *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310 [2004]).

**B.  Complaints Made to the Administration Regarding Student's Discriminatory Conduct and my Union Grievance Constitute Protected Activities**

Defendants assert that "Plaintiff's retaliation claim fails because he has not plausibly alleged that he participated in a protected activity" (Def. Mem. at 15). Defendants misstate that (1) reporting my student's discriminatory behavior, and (2) filing an improper investigation grievance with my Union do not constitute protected activities.

In its February 7, 2022, Opinion and Order, this Court declined to follow *Berger-Rothberg* and *Eubanks* where the courts held that a teacher's complaint of student harassment constituted

"protected activity" for purposes of a Title VII retaliation claim. (February 7, 2022, Opinion and Order, at 16). I respectfully request this Court to reconsider its position.

In *Eubanks*, the district court held:

> The Court agrees that these actions constitute protected activity for purposes of Eubanks's Retaliation Claim. In *Berger-Rothberg v. City of New York*, the Court found that a teacher's complaint of student harassment constituted "protected activity" for purposes of the retaliation claim. 803 F. Supp. 2d 155, 165-66 (E.D.N.Y. 2011) ("Plaintiff has produced evidence that she complained about the discriminatory conduct of her students to school administrators on a regular basis, beginning soon after she arrived at MS 226. This satisfies prongs one and two of the test for establishing retaliation: (1) that she participated in a protected activity, and (2) that Defendants knew of the activity."). Here, Eubanks similarly made written and verbal complaints to administrators of students' harassment at both Environmental Studies and Art and Design, satisfying the first and second prongs of the Retaliation Claim and NYSHRL Retaliation Claim. *See Littlejohn*, 795 F.3d at 317 (noting that informal protests of discriminatory employment practices, including making complaints to management, are protected activity); *Rivera*, 743 F.3d at 26 (finding the requirement for protected activity was satisfied where the plaintiff complained to his supervisor about his co-workers' use of racial slurs).

The court cited *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26 (2d Cir. 2012) (finding the requirement for protected activity was satisfied where the plaintiff complained to his supervisor about his co-workers' use of racial slurs) as legal authority to support the proposition that complaints about a student's harassment constitute protected activity.

*In Ringel v. N.Y.C. Dep't of Educ.*, No. 19-CV-2374 (DG) (TAM), 2022 U.S. Dist. LEXIS 20636, at *43 (E.D.N.Y. Feb. 4, 2022), the court also found that because Plaintiff has produced evidence showing that he complained about student's discriminatory conduct to school administrators on a relatively regular basis beginning soon after he arrived at the school, the first two prongs of Plaintiff's prima facie retaliation claim are satisfied. The court cited *Livingston v. City of New York*, No. 19-CV-5209 (KPF), 2021 WL 4443126, at *25 (S.D.N.Y. Sept. 28, 2021)

(holding that "given Plaintiff's assertion that he felt 'hostility' based on his 'beliefs,' the Court finds that Plaintiff's emails . . . may be protected activity.") as legal authority.

Accordingly, my complaints about student's discriminatory behavior constitute protected activities.

I also filed an improper investigation grievance with my union on March 10, 2020, as I felt it was not fair that Principal Paul was allowed to intimidate, discriminate, target, and harass me with this disciplinary action. The grievance was filed because of the improper investigation which I believe Principal Paul conducted because of my complaints about student A.B.' discriminatory behavior. Additionally, I did email my union about looking into discrimination charges. I spoke with my chapter leader about this concern verbally and she agreed it is discrimination but did not address it. (AC at ¶ 32). The Amended Complaint provides specific details how the investigation was improper (AC ¶¶ 24-28). I explicitly stated to Principal Paul that the student threatened to "slap the gay out of me" and she never addressed the issue. While discussing my grievance with district and borough, I also mentioned conduct by Principal Paul which I felt amounted to discrimination.

Despite my effective ratings, I was placed on a TIP on February 28, 2020 (AC ¶ 29). Furthermore, on March 10, 2020, I was observed by Principal Paul and shown a draft observation report with all "developing" and "ineffective" ratings. On March 20, 2020, I received a notice of discontinuance effective April 20, 2020, which was my last date of employment within the NYCDOE. (AC ¶ 36). Approximately 10 days after filing my grievance and only approximately 7 days after the Step 1 meeting, on March 19, 2020, I received a notice of discontinuance which was effective April 20, 2020.

## CONCLUSION

I have plainly alleged that I was the victim of disparate treatment and various adverse employment actions for discriminatory and retaliatory – as opposed to academic or disciplinary– purposes, in contravention to Title VII and the NYSHRL and NYCHRL. Such claims are appropriately brought against the New York City Department of Education in a plenary action. Further, I have adequately pled all of the elements of a prima facie discrimination, retaliation and hostile work environment claim. For the foregoing reasons, Defendants' motion to dismiss the amended complaint should be denied, and this action should proceed to discovery and trial.

Dated: New York, New York
      May 27, 2022

                        By:        *s/ Tyrell Small*_____
                                      TYRELL SMALL,
                                      Plaintiff pro se
                                      9161 193rd St Apt 2C
                                      Queens, NY 11423
                                      (516) 754-9028
                                      tyrelldsmall@gmail.com