USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/5/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
TYRELL SMALL,                                   :
                                                :
                               Plaintiff,       :          1:21-cv-1527-GHW
                                                :
              -against-                         :          MEMORANDUM
                                                :          OPINION AND ORDER
NEW YORK CITY DEPARTMENT OF                     :
EDUCATION and VALERIE PAUL,                     :
                                                :
                               Defendants.      :
                                                :
------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

       Plaintiff Tyrell Small taught fourth grade.  On several occasions, a particularly ill-behaved

student in Small's class used gender-based slurs to refer to him.  In his complaint, Small alleges that

Defendant Valerie Paul, the school's principal, repeatedly failed to redress the student's behavior

despite Small's numerous requests for assistance.  Later, Small was placed on a teacher improvement

plan following accusations that Small pushed and verbally abused that student.  Small then filed a

grievance with his union to challenge the disciplinary action and informally complained of

discrimination to union, district, and borough representatives.  Ten days later, Small received a

notice that he would be terminated, and he was let go a month after getting the notice.  Small alleges

that Defendants discriminated against him based on his perceived sexual orientation, that he

suffered a hostile work environment, and that Defendants retaliated against him for complaining of

Paul's alleged discriminatory conduct.

       Small has filed an amended complaint after the Court's previous dismissal of his claims in

full, and Defendants have moved to dismiss all of Small's claims as pleaded in the amended

complaint.  Because the allegations in Small's amended complaint state discrimination claims under

federal, state, and local law, fail to state a retaliation claim under any law, and state a hostile work

environment claim under local—but not federal or state—law, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

I.      BACKGROUND

A.  Facts[1]

Tyrell Small began working for the New York City Department of Education (the "DOE") as a general education teacher in the fall of 2016.  Addendum to the First Amended Complaint ("Addendum"), Dkt. No. 25, ¶ 1.  Small received a "highly effective" overall rating for his first school year, and an "effective" rating for the next two school years.  *Id.* ¶¶ 2–4.  For the 2019–2020 school year, Small voluntarily joined PS 312 in Queens, New York as a probationary teacher.  *Id.* ¶ 5.  Valerie Paul was the principal of PS 312.  *Id.*  Small was initially assigned to teach a third-grade class but took over a fourth-grade class early in the school year at Paul's request.  *Id.*  Paul observed Small's teaching on November 4, 2019 and January 14, 2020.  *Id.* ¶ 11.  Small received an "effective" rating for each observation.  *Id.*

Small alleges that school administrators and other teachers perceived him as gay because he displays feminine qualities in the classroom and does not have a deep voice.  *Id.* ¶ 6.  Other teachers told Small that his sexuality was often discussed by teachers and administrators in the teachers' lounge.  *Id.* ¶ 7.

In October 2019, one of Small's students, A.B., drew a picture of Small with his name crossed out and "I hate him" written next to it, and had a verbal altercation with another teacher.  *Id.* ¶ 8.  After Principal Paul was told by a student's parent that it was Small's fault that the other teacher was verbally attacked, Paul reprimanded Small and did not take remedial action regarding the

---

[1] Unless otherwise noted, the facts are taken from the complaint and are accepted as true for the purposes of this motion.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

student's behavior.  *Id.* ¶ 9.  Later that month, the same student called Small gay.  *Id.* ¶ 10.  Small

reported the incident to Paul in front of his paraprofessional.  *Id.*  In response, Paul asked, "what did

you do to him?"  *Id.*  Paul again took no action to address the student's behavior.  *Id.*

Small noticed a change in Paul's demeanor toward him in November 2019.  *Id.* ¶ 12.  Paul

would yell at Small in front of others, and undermined Small's disciplinary decisions regarding

students, even when Small received parental consent for those decisions.  *Id* ¶¶ 12–13.  The same

month, Paul did not allow Small to leave A.B. at school with other teachers during a school trip,

despite allowing other teachers to leave their students with behavior problems behind.  *Id.* ¶ 14.

Around the same time, students reported to Small that A.B. had put a marker cap into the back of

another student's pants "in his upper butt," as his pants were not pulled all the way up.  *Id.* ¶ 15.

A.B. "acted out again" after Small addressed the behavior.  *Id.*  Paul "did nothing to correct the

situation" after Small reported the incident to her.  *Id.*

More than once, Small's other students reported to him that A.B. made discriminatory

comments about Small based on his perceived sexual orientation.  *Id.* ¶ 16.  Small addressed those

comments with A.B. and his mother, but did not bring them to Paul's attention.  *Id.*  In November

and December 2019, A.B. began throwing items and tearing things off the walls in the classroom

after he was asked to do work without disrupting the class.  *Id.* ¶ 17.

In December 2019, Paul pulled Small out of the school's winter show in front of the entire

school to reprimand him about his alleged tone with students.  *Id.* ¶ 18.  While in Paul's office, Paul

spoke to Small in "the most threatening tone" and stated that Small will lose his job before she does.

*Id.*

On January 22, 2020, A.B. threatened Small by stating that "he would slap the gay out of

[him]."  *Id.* ¶ 19.  Small reported this threat to Paul, who did nothing to remediate the student's

behavior.  *Id.* ¶¶ 19, 28.  Paul pulled Small into her office, spoke to him in a "condescending tone,"

and told Small that he "was a problem." *Id.* ¶ 19.  The same month, Paul placed another general education teacher in Small's class to observe him, despite the fact that his class had earned the best test scores in the grade.  *Id.* ¶¶ 20–21.  The observation made Small feel uncomfortable; according to Small, "[he] was a target."  *Id* ¶ 21.  In January or February 2020, two parents of students informed Small that Paul was inquiring about him and that "she did not like [him] because [he is] gay."  *Id.* ¶ 22.  Around the same time, student A.B. called Small a "gay n*****."  *Id.* ¶ 37.  Small reported this to Paul, who did not take any disciplinary action against the student.  *Id.*

On February 7, 2020, A.B. slapped Small in the face with an article of clothing.  *Id.* ¶ 23.  Paul did nothing to remediate the student's conduct after it was reported to her.  *Id.*  On February 16, 2020, Small received a disciplinary notice dated February 13, 2020.  *Id.* ¶ 24.  After Small's disciplinary meeting with Paul on February 26, 2020, Small received a disciplinary letter dated February 27, 2020, containing allegations of corporal punishment and verbal abuse regarding A.B.  *Id.* ¶ 25.  Small maintains that the allegations of corporal punishment and verbal abuse are false.  *Id.*  Small alleges that Paul coerced his testimony during the investigation for these accusations and explicitly told him what he should not say, and that she failed to question adult witnesses and A.B.'s mother.  *Id.* ¶ 26.  Paul continued to use a threatening tone with Small that she did not use when speaking to at least one other teacher.  *Id.* ¶ 27.

Paul placed Small on a teacher improvement plan on February 28, 2020.  *Id.* ¶ 29.  He was subject to mandatory weekly meetings and began receiving communications after 10:00 p.m. that mandated a reply.  *Id.* ¶ 29.  In response, on March 10, 2020, Small filed a grievance through his union alleging that he was being improperly investigated.  *Id.* ¶ 31.  The same day, Paul observed Small and showed him a draft of her observation report, which contained all "Developing" and "Ineffective" ratings.  *Id.* ¶ 35.  Ten days later, on March 20, 2020, Small received his employment discontinuance notice, effective April 20, 2020.  *Id.* ¶ 36.

While Small discussed filing discrimination charges against Paul with his union and certain union representatives, *id.* ¶¶ 32–33, he was initially told that—because he had been discontinued—there was nothing that could be done, *id.* ¶ 33.  When Small expressed his concerns about discrimination to the appeal committee, however, that committee took on his case.  *Id.* ¶ 34.

Meanwhile, also in March 2020 but before Small's discontinuance, A.B. wrote on the classroom's bathroom sign-in sheet "suck d***" and other profanity.  *Id.* ¶ 30.  And on April 15, 2020, A.B. wrote on a submission during remote learning, "I am tired of this f****** work, gay f*****."  *Id.* ¶ 37.  Despite Small's reports to Paul after each of these incidents, Paul still did not take any disciplinary action against the student.  *Id.* ¶¶ 30, 37.

Small was officially discontinued and terminated on April 20, 2020.  *Id.* ¶ 38.  He was replaced by two teachers who, he alleges, are not perceived as gay because they are women who have children and are married to men.  *Id.* ¶ 40.  Further, Small alleges that at least five other probationary or untenured teachers, who were not perceived as gay, were not discontinued or disciplined despite engaging in similar behavior to his.  *Id.* ¶ 39, 41–44.

**B.  Procedural History**

After receiving a right-to-sue letter from Equal Employment Opportunity Commission on February 2, 2021, Small commenced this action against Paul and the DOE on February 19, 2021.  *See* Dkt. No. 2.  Small asserted claims of discrimination based on his perceived sexual orientation, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL").  On July 7, 2021, Defendants filed a motion to dismiss Small's original complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Dkt. No. 18.  And on February 7, 2022, the Court granted Defendants' motion to dismiss in full.  *Small v. City of New York*, No. 21-cv-1527, 2022 WL 376030 (S.D.N.Y. Feb. 7, 2022).

On February 28, 2022, Small filed an amended complaint, which is the subject of this order. Dkt. No. 25 (the "FAC").  On April 29, 2022, Defendants filed a motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Dkt. No. 33 ("Defs' Mem.").  On May 27, 2022, Small filed a memorandum of law in opposition.  Dkt. No. 36 ("Pl's Opp.").  Defendants replied on June 3, 2022.  Dkt. No. 37 ("Reply").

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  (citing *Twombly*, 550 U.S. at 556).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement."  Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79).  Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).  In that context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits.  The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  As the Second Circuit recently reaffirmed in *Lynch*, "[i]t is well established that a pleading is deemed to include any 'written instrument' that is attached to it as 'an exhibit,' or is incorporated in it by reference." *Lynch*, 952 F.3d at 79 (citations omitted).  Courts may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

Because Small is proceeding *pro se*, the Court must liberally construe his submissions and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006));  see also, *e.g.*, *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))).  Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)).  Even so, "dismissal of a pro se complaint is . . . appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## III.   DISCUSSION

Small asserts claims of discrimination based on his perceived sexual orientation, hostile work environment, and retaliation under Title VII, the NYSHRL, and the NYCHRL against Paul and the DOE.  First, the claims against Paul under Title VII must be dismissed because "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam).  As for Small's other claims, as explained below, (1) his discrimination claims under Title VII, the NYSHRL, and the NYCHRL will not be dismissed, (2) his hostile work environment claims under Title VII and the NYSHRL, but not under the NYCHRL, will be dismissed, and (3) his retaliation claims will be dismissed under all three statutes.

### A.   Discrimination Claims

Small has adequately pleaded his Title VII, NYSHRL, and NYCHRL discrimination claims. "Title VII prohibits an employer from discriminating in 'compensation, terms, conditions, or privileges of employment, because of [an] individual's race, color, religion, sex or national origin.'"

*Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (quoting 42 U.S.C. § 2000-e(2)(a)(1)). The NYSHRL and NYCHRL similarly prohibit employers from discriminating based on race, color, sex, gender, and sexual orientation. *See* N.Y. Exec. Law § 296; N.Y.C. Admin. Code § 8-107(1)(a). Discrimination on the basis of *perceived* sexual orientation is also prohibited under all three statutes. *See Zarda v. Altitude Express, Inc.*, 883 F. 3d 100, 122 (2d Cir. 2018) (Title VII); *Rohn Padmore, Inc. v. LC Play, Inc.*, 679 F. Supp. 2d 454, 462 (S.D.N.Y. 2010) (NYSHRL); N.Y.C. Admin. Code § 8-107(1)(a) (NYCHRL).

To state a prima facie case of discrimination under Title VII, a plaintiff must allege "(1) that she is a member of a protected class, (2) that she was qualified for the position . . . , (3) that she suffered an adverse employment action, and (4) [that she] can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. And a complaint that plausibly alleges each of the required elements under Title VII also properly states NYSHRL and NYCHRL claims. *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) ("Claims under both Title VII and the NYSHRL . . . are generally treated as 'analytically identical,' and addressed together." (quoting *Lenzi v. Systemax, Inc.*, 944 F. 3d 97, 107 (2d Cir. 2019)); *id.* at 327 ("The NYCHRL uses the same framework as Title VII and the NYSHRL, but contains, as to some elements, more liberal pleading and proof standards.").

Small has met his pleading burden under Title VII—and, accordingly, has properly pleaded his discrimination claim under all three statutes. The first three elements of Small's claim are indisputably met. First, Small sufficiently alleges that he is a member of a protected class based on his perceived sexual orientation. *See Sanderson v. Leg Apparel LLC*, 19-cv-8423, 2020 WL 3100256, at *9 (S.D.N.Y. June 11, 2020). Second, given his years of experience teaching for the DOE, Small has alleged that he was qualified for his position. And third, Small has adequately pleaded that he was subject to an adverse employment action because he was terminated. *Vega v. Hempstead Union Free*

*Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) ("Examples of materially adverse changes include termination of employment . . . ."); *see also Taylor v. Seamen's Soc. For Child.*, No. 12-cv-3713, 2013 WL 6633166, at *12 (S.D.N.Y. Dec. 17, 2013) ("Termination of employment is the quintessential materially adverse employment action under Title VII.").

As for the final element, Small has met his pleading burden of "sustain[ing] a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. "[T]he 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason." *Vega*, 801 F.3d at 87 (quoting *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997)). "A plaintiff can meet that burden through direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination." *Id.* (citations omitted). "A plaintiff may prove discrimination indirectly either by . . . showing that the employer's stated reason for its employment action was pretext to cover up discrimination or by otherwise creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination." *Id.* (citations omitted). "At the pleading[ ] stage . . . a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.*

In his amended complaint, Small has pleaded facts that create an "inference of discrimination" based on "the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). To do so, Small has added a crucial allegation to his prior complaint: His amended complaint directly asserts that Paul

told two parents, in January or February 2020, that she did not like Small "because [he is] gay." Addendum ¶ 22.

That claim casts Small's allegations about Paul's actions in lead-up to his discontinuance, and the termination itself, in a significantly different light than they otherwise might appear. Because Small's original complaint did not contain any evidence that Paul harbored anti-gay animus, that complaint failed to "allege any facts that give rise to an inference that Paul's failure to discipline [A.B.]" or "that the disciplinary action, and Small's ultimate firing," were motivated by Small's perceived sexual orientation. *Small*, 2022 WL 376030 at *5. But if, as Small now alleges, Paul stated that she did not like Small because of his perceived sexual orientation, Addendum ¶ 22, then a reasonable factfinder could find that Paul's actions—including terminating Small—were taken at least in part for a discriminatory reason. *See Vega*, 801 F.3d at 87. At this stage, that is sufficient to sustain Small's discrimination claim. *See Zimmermann v. Associates First Cap. Corp.*, 251 F.3d 376, 382 (2d Cir. 2001) ("The task . . . is to examine the entire record and . . . make the case-specific assessment as to whether a finding of discrimination may reasonably be made."); *see also Vega*, 801 F.3d at 87 (noting that a "plaintiff may prove discrimination indirectly" by "creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination"); *compare with, e.g., Salas v. N.Y.C. Dept. of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) (granting motion to dismiss due to plaintiff's failure to allege that "her supervisors or other management . . . made any statements about her [protected class]" or facts that support an inference that plaintiff's protected class played a role in her employer's decision to impose adverse employment action). Accordingly, Small has plausibly pleaded his Title VII, NYSHRL, and NYCHRL discrimination claims.[2]

---

[2] Small has also added allegations in the FAC concerning his less favorable treatment as compared to other, similarly situated employees who Paul did not perceive of as gay. *See* Addendum ¶¶ 39–44; *Littlejohn*, 795 F.3d at 312–13 (noting that an inference of discrimination can arise when an employer engages in "more favorable treatment of employees not

B.      **Hostile Work Environment Claims**

Small has failed to adequately plead his hostile work environment claims under Title VII and the NYSHRL, but has stated such a claim under the NYCHRL.  To state a claim for hostile work environment under Title VII or the NYSHRL, a plaintiff must allege that his "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Summa v. Hofstra Univ.*, 708 F. 3d 115, 123–24 (2d Cir. 2013) (noting that the standard for a hostile work environment claim under the NYSHRL is the same as under Title VII).  The plaintiff must "plead facts that would tend to show that the complained of conduct:  (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citations omitted).

"In determining whether a plaintiff suffered a hostile work environment," a court "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 510 U.S. at 23).  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.  Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)) (internal quotation

---

in the employee's protected group" or when "an employer replaces a terminated or demoted employee with an individual outside the employee's protected class").  Because Small has sufficiently raised an inference of discrimination based on the events leading to his discharge, the Court need not rely on this theory to sustain his discrimination claims.

marks omitted).  To survive a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"  *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).  The Second Circuit has "repeatedly cautioned against setting the bar too high in this context."  *Id.* (quoting *Terry*, 336 F.3d at 148); *see also Feingold v. New York*, 266 F.3d 138, 150 (2d Cir. 2004) ("The environment need not be 'unendurable' or 'intolerable.'" (quoting *Terry*, 336 F.3d at 148)).  "[T]he plaintiff also must show that the hostile conduct occurred because of a protected characteristic."  *Tolbert*, 790 F.3d at 439.

Small's amended complaint, like his original complaint, does not adequately allege a Title VII or NYSHRL hostile work environment claim.  To start, assuming that student-on-teacher harassment can form the foundation for a Title VII hostile work environment claim, the amended complaint fails to plausibly allege that the comments by a fourth-grade student in Small's class were sufficiently severe or pervasive to create a hostile work environment.  *See Berger-Rothberg v. City of New York*, 803 F. Supp. 2d 155, 164–65 (E.D.N.Y. 2011) (explaining that to prove a hostile work environment claim based on student-on-teacher harassment, a plaintiff must show that a hostile environment existed within the meaning of Title VII); *see also Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 190 (2d Cir. 2010) (summary order) (noting that the Second Circuit "has not addressed whether student-on-teacher harassment can give rise to a hostile work environment claim").  Small's amended complaint adds no new allegations concerning A.B.'s behavior to the original complaint.  *See generally* FAC; *see also Small*, 2022 WL 376030, at *7 (describing Small's allegations about A.B.'s behavior:  "that over a seven-month period, [A.B.] called [Small] gay, threatened to "slap the gay out of [him]," called him a "gay n*****," slapped him in the face with an article of clothing, and wrote on an assignment "I am tired of this f****** work, gay f*****").  As this Court explained in its prior order:

> The student's conduct was undoubtedly offensive. Even so, incidents of discrimination "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)). As pleaded, the five incidents over a seven-month period involving a single fourth grader in Small's class are not sufficiently severe or pervasive to support a hostile work environment claim.

*Small*, 2022 WL 376030, at *7 (footnote omitted). Particularly given that teachers "generally have the ability to discipline students for inappropriate (or illegal) conduct," these comments do not constitute a hostile work environment as a matter of law. *Andersen v. Rochester City Sch. Dist.*, No. 09-cv-6259, 2011 WL 1458068, at *4 (W.D.N.Y. Apr. 15, 2011), *aff'd*, 481 F. App'x 628 (2d Cir. 2012); *see also, e.g.*, *Karunakaran v. Borough of Manhattan Cmty. Coll.*, 18-cv-10723, 2021 WL 535490, at *8 (S.D.N.Y. Feb. 12, 2021) (dismissing student-on-teacher hostile work environment claim with two aggressive verbal and physical incidents as not sufficiently severe or pervasive); *compare with Berger-Rothberg*, 803 F. Supp. 2d at 165 (finding that a student-on-teacher harassment claim that involved "constant, vicious name-calling, coupled with repeated acts and threats of violence, including at least one incident involving inappropriate sexual contact, and other abuse allegedly directed at [the] [p]laintiff" survived summary judgment).

Small's other allegations about Paul's behavior and the actions of his coworkers likewise do not constitute severe or pervasive enough harassment to plausibly state a federal or state hostile work environment claim. Outside of A.B.'s conduct, Small raises the following allegations: that (1) coworkers and administrators often discussed Small's sexuality, (2) Small was yelled at by Principal Paul in front of others; (3) Paul undermined Small's disciplinary decisions; (4) Paul questioned parents about Small and his sexuality, stating she did not like him because he is gay; and (5) after (purportedly false) allegations of Small's use of corporal punishment against A.B., Small was placed on a teacher improvement plan, subjected to a coercive investigation, required to have his class observed by a co-teacher, and ultimately discontinued after receiving low observation scores.

14

Addendum ¶¶ 7–8, 10, 12, 14–15, 17–20, 22–26, 29–30, 35, 37.  Drawing all reasonable inferences in

Small's favor, *see Burch,* 551 F.3d at 124, the Court assumes that those above-listed incidents

occurred at least in part because of Paul and other teachers' dislike of Small's perceived sexual

orientation, *see* Addendum ¶¶ 7, 22, and thus constitute conduct that "occurred because of a

protected characteristic." *Tolbert,* 790 F.3d at 439.  Nonetheless, Small's allegations do not amount

to conduct so severe or pervasive that they state a plausible hostile work environment claim under

Title VII or NYSHRL.  *Compare with, e.g., Garcia v. NYC Health & Hosps. Corp.*, No. 19-cv-997, 2019

WL 6878729, at *7 (S.D.N.Y. Dec. 17, 2019) (concluding that an incident where the plaintiff was

publicly questioned about his disability by his supervisor did not constitute a hostile work

environment even where coupled with four incidents where his supervisor yelled at or was

aggressive towards him and an incident where the plaintiff believed his supervisor referred to him as

a "f*****" in another language" (asterisks added)); *LeGrand v. WalMart Stores E., LP*, 779 F. App'x

779, 781 (2d Cir. July 11, 2019) (summary order) (holding that the plaintiff plausibly alleged a hostile

work environment where her supervisor called her "r*******," disclosed her disability to others and

referred to her using racial epithets among other employees (asterisks added)).[3]

Small, however, has stated a plausible hostile workplace environment claim under the

NYCHRL.  That is because the NYCHRL, unlike Title VII and the NYSHRL, "does not require . . .

conduct severe or pervasive enough to alter the terms" of one's employment in order to plead a

hostile work environment claim.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114

(2d Cir. 2013); *see Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S. 2d 27, 37–40 (N.Y. App. Div. 2009)

(rejecting the "severe and pervasive" standard as inconsistent with the NYCHRL's "broad remedial

---

[3] The Court observes that many of the actions Small complains of—including being placed on a teacher improvement plan, being investigated, and having his class observed—arose only after Small was accused of corporal punishment.

purpose").  Instead, a hostile work environment claim under the NYCHRL only need plausibly allege unequal treatment based on a protected characteristic.  *See Mihalik*, 715 F.3d at 114.

Mapped onto the requirements for student-on-teacher harassment, this means that Small can state a NYCHRL hostile work environment claim by plausibly pleading that his employer knew of *any* alleged harassment based Small's perceived sexual orientation—even if that harassment was not severe and pervasive—and failed to take appropriate remedial action.  *See Berger-Rothberg*, 803 F. Supp. 2d at 164–65.  His complaint meets that standard.  As described above, A.B.'s alleged comments were plainly targeted at Small's perceived sexual orientation.  *See* Addendum ¶¶ 19, 37. And Small alleges that Paul both knew of the comments and failed to take appropriate remedial action.  *See id.* ¶¶ 10, 19, 28 (alleging that, after Small complained to Paul about A.B.'s behavior, Paul blamed Small for one incident and "did nothing to correct" another).  Of course, Defendants are free to present evidence after the motion-to-dismiss stage to support arguments that Paul's remedial actions were appropriate.  But "[t]he question of whether school officials took appropriate remedial action is a question of fact, not law"; as such, it cannot preclude Small's claim now.  *Peries v. N.Y.C. Bd. of Educ.*, No. 97-cv-7109, 2001 WL 1328921, at *7 (E.D.N.Y. Aug. 6, 2001).

In sum, because Small does not plausibly allege that he was subject to severe or pervasive harassment based on a protected characteristic, his Title VII and NYSHRL hostile work environment claims are dismissed.  Because the NYCHRL has no severity requirement, however, his claim under city law may proceed.

## C.  Retaliation Claims

Small's amended complaint fails to plead any retaliation claim.  Title VII, the NYSHRL, and the NYCHRL prohibit employers from discriminating against an employee because the employee opposes any practice made unlawful by those statutes.  *See* 42 U.S.C. § 2000e-3(a) (Title VII); N.Y. Exec. Law § 296(7) (NYSHRL); N.Y.C. Admin. Code § 8-107(7) (NYCHRL).  To survive a motion

to dismiss a retaliation claim under Title VII or the NYSHRL, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017) (quoting *Littlejohn*, 795 F.3d at 316); *see Farmer*, 473 F. Supp. 3d at 330 (noting that "[t]he same standards govern retaliation claims" under Title VII and the NYSHRL). And "to prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citations omitted); *see also Leroy v. Delta Air Lines*, No. 21-267-cv, 2022 WL 12144507, at *3 (2d Cir. Oct. 27, 2022) (summary order) ("To survive a motion to dismiss, a plaintiff claiming retaliation under the NYCHRL must allege that she engaged in protected activity.").

Small has failed to plead a retaliation claim under any of these laws because he has failed to plausibly allege participation in a protected activity. For "the 'protected activity' element of a Title VII . . . claim, the plaintiff need only 'have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII . . . .'" *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)). But "[a] plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013). As in his original complaint, Small asserts that he participated in two different protected activities: (1) reporting his student's discriminatory behavior, and (2) filing an improper investigation grievance with his Union. *See* Pl's

Opp. at 21.[4]  And as this Court held in its prior order, neither constitutes a protected activity.  *See*

*Small*, 2022 WL 376030, at *8–9.

> To start, as the Court previously explained:
>
> Small's complaints regarding the student's conduct are not a protected activity.
> "[N]ot every act by an employee in opposition to . . . discrimination is protected.
> The opposition must be directed at an unlawful employment practice of an
> employer, not an act of discrimination by a private individual."  *Wimmer v. Suffolk
> Cnty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (quoting *Silver v. KCA, Inc.*, 586
> F.2d 138, 141 (9th Cir. 1978)); *see also Melendez v. Cnty. of Westchester*, No. 17-cv-9637,
> 2021 WL 467085, at *10 (S.D.N.Y. Feb. 8, 2021) ("[T]o fall within Title VII's
> protection, an employee's opposition must be directed at an unlawful employment
> practice of an employer, not an act of discrimination by a private individual."
> (internal quotation marks omitted) (quoting *Braham v. State of New York Unified Ct.
> Sys.*, No. 94-cv-2193, 1998 WL 107117, at *3 (S.D.N.Y. Mar. 11, 1998))).
>
> Here, Small only alleges that he complained about his student's harassment.  Because
> Small only complained about the discriminatory conduct of his student—a child, not
> his employer—Small could not reasonably believe that he was opposing an unlawful
> *employment practice*.  Even if Small subjectively believed that Title VII made
> discriminatory comments by a fourth grader illegal, that belief is not reasonable.
> Thus, Small's complaints are not protected activity for purposes of his retaliation
> claim under Title VII.

*Small*, 2022 WL 376030, at *8.  The Court further observed that two cases had held to the

contrary—that complaining about student behavior could constitute a protected activity—but

declined to follow those cases because they "cited no legal authority to support the proposition that

complaints about a student's harassment constitute protected activity."  *Id.* at *9 (rejecting the

reasoning on this point of *Berger-Rothberg*, 803 F. Supp. 2d at 165–66, and *Eubanks v. N.Y.C. Dep't of

Educ.*, No. 18-cv-7877, 2021 WL 1110587, at *14 (S.D.N.Y. Mar. 23, 2021), the latter of which relied

entirely on *Berger-Rothberg*).

---

[4] Small also suggests in passing that his expression of informal concerns about discrimination to union, district, and
borough representatives could constitute a protected activity for purposes of his retaliation claims.  Pl's Opp. at 23.  But
he does not allege that Paul ever knew of those conversations, which precludes their use to undergird a retaliation claim.
*See Intl. Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (noting that
because "[a]n employer retaliates when it attempts to stifle allegations of illegality or punish those making accusations,"
"[i]t follows that an employer must have notice that a plaintiff opposed conduct prohibited by the statute" (internal
citation omitted)).

Small "respectfully request(s) this Court to reconsider its position" on this issue, and notes that a third court has now adopted *Berger-Rothberg*'s reasoning.  Pl's Opp. at 22 (citing *Ringel v. N.Y.C. Dept. of Educ.*, No. 19-cv-2374, 2022 WL 17495081, at *17 (E.D.N.Y. July 22, 2022) (finding that "[b]ecause [the plaintiff] has produced evidence showing that he complained about [a student's] discriminatory conduct to school administrators on a relatively regular basis," the plaintiff had satisfied his burden of raising a protected activity for purposes of a retaliation claim)).  Having examined these cases and the underlying law afresh, the Court continues to believe that complaints about student harassment—as opposed to complaints about *a school or administrator's response to student harassment*—cannot constitute a protected activity for purposes of Title VII, the NYSHRL, or the NYCHRL.

That conclusion starts with the laws themselves, which make unlawful retaliation for opposing any practice made illegal by the underlying statutes.  *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate . . . against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter."); N.Y. Exec. Law § 296 ("It shall be unlawful discriminatory practice . . . [f]or any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article."); N.Y.C. Admin. Code § 8-107(7) ("It shall be an unlawful discriminatory practice . . . to retaliate or discriminate in any manner against any person because such person has . . . opposed any practice forbidden under this chapter.").  In accordance with the text of these statutes, employers may not retaliate against employees for opposing a hostile work environment or other conduct that, itself, is unlawful under these statutes.  *See, e.g.*, *Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 313 (S.D.N.Y. 2016) (finding that a letter alleging discrimination by an employer constitutes a protected activity under Title VII).

In the context of student-on-teacher harassment, those rules mean that for a teacher's complaint to be a protected activity for purposes of a retaliation claim, the teacher must have complained not only about a student's allegedly harassing behavior, but also about the school or supervisor's response to it. That is because both the behavior itself and an inadequate response are elements of a student-on-teacher hostile work environment claim; that is, they are both elements of the underlying conduct that is itself unlawful. *See Berger-Rothberg*, 803 F. Supp. 2d at 164–65 (noting that to plead a hostile work environment claim based on student-on-teacher harassment, a plaintiff must plead "first that a hostile environment existed and second that the school board either provided no reasonable avenue of complaint or knew of the harassment and failed to take appropriate remedial action"). Put simply, Title VII, the NYSHRL, and the NYCHRL prohibit discriminatory employment practices—they do not make a nine-year-old's discriminatory comments illegal.[5] Because complaints about a student's harassing behavior do not state a hostile work environment claim absent additional allegations that a school or administrator failed to take appropriate remedial action, protesting solely a student's behavior is not opposing something unlawful under Title VII, the NYSHRL, or the NYCHRL.

Here, however, Small only alleges that he complained about A.B.'s behavior, not about the school's (or Paul's) response to it. *See* Addendum ¶¶ 9, 15, 19, 23, 28, 30, 37 (Small noting various

---

[5] The distinction between complaining about a student's behavior and complaining about a school actor's response to that behavior, moreover, is not merely technical; rather, it is necessary to ensure that retaliation claims reflect the core logic underlying student-on-teacher harassment claims. The student-on-teacher harassment theory was first used in this district in *Peries v. New York City Board of Education*. In that case, the court explained that it made sense to sometimes hold school boards liable for acts of students because the board "retains substantial control over the context in which the harassment [by students] occurs." *Peries*, 2021 WL 1328921, at *6 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646 (1999) (alteration in original)). In other words, the only reason that student harassment could be imputed to school officials (and, in other cases, to departments of education) is that those officials have "the power to suspend students and take other actions not commonly carried out by individual classroom instructors"; the theory is that by not doing so, the administrators have supported a hostile environment for the teacher. *Id.* So if there is no allegation that a school administer failed to act appropriately in response to alleged student harassment, there is simply no basis on which to impute the behavior of the student to that administrator. And by the same token, if there is no allegation that the teacher complained about the actions of the *administrator*, then there is no allegation that he complained about—or was retaliated against for his complaint about—an unlawful employment practice.

times he complained about A.B.'s behavior but not stating that he also complained about Paul's

reactions to his complaints); *id.* ¶ 47 ("I believe that I have been . . . retaliated against [by] my school

principal for reporting [A.B.'s] inappropriate discriminatory behavior."); Pl's Opp. at 23 (describing

his complaints as "about [a] student's discriminatory behavior").  Those complaints were not a

protected activities for purposes of establishing a retaliation claim because, as explained, they do not

represent opposition to an unlawful employment practice by an employer.  *See Wimmer*, 176 F.3d at

135.  So they cannot support Small's retaliation claims.

Additionally, the amended complaint—like the original complaint—fails to plausibly allege

that Small's union grievance constitutes protected activity.  "Filing a union grievance regarding

discriminatory treatment is a protected activity."  *Washington v. Garage Mgmt. Corp.*, No. 11-cv-3420,

2012 WL 4336163, at *17 (S.D.N.Y. Sept. 20, 2012).  However, "union grievances that do not

complain of discrimination do not constitute a protected activity."  *Melie v. EVCI/TCI Coll. Admin.*,

374 F. App'x 150, 153 n.* (2d Cir. 2010) (summary order); *accord Saber v. New York State Dep't of Fin.*

*Servs.*, No. 15-cv-5944, 2017 WL 985889, at *12 (S.D.N.Y. Mar. 10, 2017).

Small's allegations about his union grievance in his amended complaint are substantially

identical to those in his original complaint:  He indicates that the grievance was filed because Paul (in

his view improperly) investigated him for allegations of corporal punishment.  *See* Addendum ¶ 32

("I initially filed a grievance because of the improper investigation"); Pl's Opp. at 23 ("The grievance

was filed because of the improper investigation").  Small does suggest that his *motivation* for filing the

grievance, at least in part, was his frustration with Paul's alleged discrimination against him.  *See* Pl's

Opp. 23 (noting that he filed the grievance because he "felt it was not fair that Principal Paul was

allowed to intimidate, discriminate, target, and harass me with this disciplinary action").  But he does

not allege that the grievance itself complained of discrimination; to the contrary, the only reasonable

inference from the amended complaint is that it did not contain any discrimination-based

allegations.  *See* Addendum ¶ 32 ("Though I initially filed a grievance because of the improper

investigation, I did email my union about looking into discrimination charges.").  Given that fact,

Small has failed to allege that his union grievance constituted a protected activity under Title VII, the

NYSHRL, or the NYCHRL, because he has failed to allege that it opposed a practice—namely,

discrimination—made unlawful by those statutes.  *See Chidume v. Greenburgh-N. Castle Union Free Sch.*

*Dist.*, No. 18-cv-01790, 2020 WL 2131771, at *4 (S.D.N.Y. May 4, 2020) ("The facts alleged by

Plaintiff indicate that he filed a union grievance for violation of the collective bargaining agreement

in abolishing a class of teaching assistant positions, but there is no indication that the grievance

alleged discrimination.  Therefore, [it] does not qualify as protected conduct under Title VII."

(citation omitted)).  Accordingly, Small has failed to state a plausible retaliation claim.

## IV.   LEAVE TO AMEND

Small will not be granted leave to further amend his complaint.  While "[i]t is the usual

practice upon granting a motion to dismiss to allow leave to replead," *Cortec Indus., Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), leave to amend may be denied "for good reason, including

futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v.*

*Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal citation omitted).  Here, given that Small has

already had the "benefit of a ruling" with which to amend his complaint once to "cur[e] specific

deficiencies," additional amendment is likely futile.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.,*

*LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *see Apotex Inc. v. Acorda Theraputics, Inc.*, 823 F.3d 51, 62 (2d

Cir. 2016) ("Where is appears that granting leave to amend is unlikely to be productive . . . it is not

an abuse of discretion to deny leave to amend." (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129,

131 (2d Cir. 1993)).

## V.   CONCLUSION

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order

would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.

*See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

For the reasons described above, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 33.

SO ORDERED.

Dated:  January 5, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge